IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Patrick O'Neal Harris, | ) | Civil Action No.: 2:23-cv-06282-DCC-MGB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Federal Bureau of Prisons; | ) | |
| W. Pistory; Timothy Young; S. Janson; | ) | |
| L. Newcomb; T. Hamilton; A. Lemos; | ) | |
| P. Davis; R. Ferry; Coleman; Evans; | ) | |
| K. Bonorden; Wells; Nevils; D. Cooper; | ) | |
| Parker; A. Brayes; C. Barsh; Preston; | ) | |
| Moreaus; Morales; Williard; Screws; | ) | |
| Guss; Vindanver; Lovett; Ellison; | ) | |
| C. Thorpe; B. Perez; Howard; Ready; | ) | |
| M. Allen; A. Brinson; K. Ridgeway; | ) | |
| Randolph; R. Velez; K. Julian; | ) | |
| L. Brabham; M. Taylor; C. Rodrigues; | ) | |
| Dorsey; S. Gianelli; K. Wohlgemuth; | ) | |
| Morgan; A. Anderson; Schmidtz; | ) | |
| F. Collins; | ) | |
| Director, Federal Bureau of Prisons; and | ) | |
| John Does, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

Plaintiff purports to bring (1) *Bivens* claims under the First, Fifth, and Eighth Amendments, (2) tort claims, (3) a claim for disability discrimination. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971); Federal Tort Claims Act ("FTCA"), 29 U.S.C. §§ 1346 and 2671, et seq.; Americans with Disabilities Act ("ADA"). However, the *Bivens* and FTCA claims are barred because Plaintiff did not exhaust the administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997, and the FTCA, 29 U.S.C. §

2675. Plaintiff's ADA claim is barred because neither that law nor the Rehabilitation Act provides a damages remedy for the harm alleged.

Also, even liberally construing this pro se Complaint, Plaintiff has failed to allege facts that support a cognizable *Bivens* claim against any individual Defendants for four reasons:

- Several Defendants are either not subject to personal jurisdiction in South Carolina or have absolute immunity from suit;

- There is no official capacity liability under *Bivens*;

- Plaintiff's claims against the individual Defendants in their individual capacities arise in a new context and special factors counsel against extending *Bivens* to this new context; and

- The Individual Defendants are entitled to qualified immunity.

## BACKGROUND

### A. Parties

Plaintiff Patrick O'Neal Harris, Reg No. 33905-057, is a former federal inmate previously incarcerated at FCI Edgefield during the timeframe referenced in the Complaint. *See* ECF Nos. 1, 1-4, 1-5, 12-2, & 12-4. Specifically, Plaintiff was released from BOP custody on January 12, 2024.[1] **Ex. 1, Declaration of J. Carter, Att. A, SENTRY Inmate Quarters History.**

The forty-two individual Defendants named and served in this action are current and former employees of the Bureau of Prisons ("BOP") and the United States Public Health Service ("PHS"). During the timeframe referenced in the Complaint, thirty-six Defendants (Allen, Barsh, Bonorden, Brabham, Bray, Brinson, Coleman, Collins, Cooper, Davis, Evans, Ferry, Giannelli, Hamilton,

---

[1] Defendants respectfully request that the Court take judicial notice of Plaintiff's place of incarceration and release date, which can be verified on the Federal Bureau of Prisons public website at https://www.bop.gov/inmateloc/ by utilizing the inmate locator. *See Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (explaining courts "may properly take judicial notice of matters of public record").

Howard, Janson, Lemos, Morales, Morgan, Nevils, Parker, Perez, Pistory, Randolph, Ridgeway, Rodriguez, Schmidt, Screws, Taylor, Thorpe, Vandiver, Velez, Wells, Willard, Wohlgemuth, and Young) were employed by the BOP at FCI Edgefield. Additionally, four Defendants (Anderson, Dorsey, Julian, and Newcomb) are PHS Commissioned Officers who were stationed at FCI Edgefield. **Ex. 2, Declaration of A. Anderson; Ex. 3, Declaration of K. Dorsey; Ex. 4, Declaration of K. Julian; Ex. 5, Declaration of L. Newcomb**. Defendant Phelps is the Regional Director for the Southeast Region and was stationed at the BOP's Southeast Regional Office in Atlanta, Georgia, during the relevant time period.[2] **Ex. 1 at ¶ 16**. Defendant Peters was the Director of the BOP and was stationed in Washington, D.C., during the relevant time period. **Ex. 1 at ¶ 17**. In addition to the individual Defendants, Plaintiff also named John Does who have not been identified.

**B.      Plaintiff's Complaint**

Plaintiff filed the initial Complaint in this matter on December 6, 2023. ECF No. 1. The Court conducted an initial screening pursuant to 28 U.S.C. § 1915 and authorized service of process upon the named Defendants and others mentioned in the pleadings, except for "Preston, Guss, Lovett, Ellison, Ready, and the Governor of South Carolina." ECF No. 19. These individuals have not been served to date, and the Court has since dismissed the Governor of South Carolina as a Defendant. *See* ECF Nos. 24 & 47. Defendant Moreaus was not identified and not served.

---

[2] Regional Director Phelps is not a named Defendant in the Complaint, does not appear on the docket sheet, and is not mentioned in the Court's screening orders, unlike the other Defendants. However, the Court apparently authorized service of process upon him, which was accepted at the Southeast Regional Office in July 2024. As such, Regional Director Phelps is considered a Defendant in this action and is represented by the undersigned counsel, who raises the defenses as argued herein.

Upon screening, the Court identified claims under *Bivens*, the FTCA, and the ADA. ECF No. 24 at 1. While a concise summary of Plaintiff's Complaint is difficult to produce, the gravamen of his allegations are that he experienced an excessive force incident on September 25, 2023; that the BOP did not properly treat his alleged injuries from that altercation; that the BOP did not properly treat his epilepsy; that his conditions of confinement were unconstitutional; that staff failed to protect him; that he was denied due process in his disciplinary action that resulted in his placement in the Special Housing Unit ("SHU"); and that he was retaliated against and denied access to forms and documentation.

## LEGAL STANDARDS

### A.     Rule 12(b)(1): Lack of Subject Matter Jurisdiction

Sovereign immunity is jurisdictional. *Cunningham v. Gen. Dynamics Info. Tech.*, 888 F.3d 640, 643 (4th Cir. 2018) (citing *Kerns v. United States*, 585 F.3d 187, 193–94 (4th Cir. 2009)). The United States is immune from private civil suits without its express consent. *Id.* Subject matter jurisdiction is a threshold issue, and the Court must address it before reaching the merits of the case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95–102 (1998).

In deciding a Rule 12(b)(1) motion, the Court may "consider exhibits outside the pleadings" and, unlike in a motion for summary judgment, may "weigh the evidence" to resolve disputed factual issues. *Id.*; *see Kerns*, 585 F.3d at 192. The plaintiff has the burden to show an unequivocal waiver of sovereign immunity allows his suit. *Welch*, 409 F.3d at 651. "If the plaintiff fails to meet this burden, then the claim must be dismissed." *Id.*

Thus, the lens for evaluating the Defendants' sovereign immunity and absolute immunity arguments here, *see* Argument, Section A and D.2., is Rule 12(b)(1). *See Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995) (applying Rule 12(b)(1) to jurisdictional FTCA arguments).

**B.      Rule 12(b)(2): Lack of Personal Jurisdiction**

When a court's personal jurisdiction is challenged, the burden is on the plaintiff to establish that jurisdiction exists by a preponderance of the evidence.  *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).  The court considering the issue of personal jurisdiction may consider the parties' pleadings, affidavits, and other supporting documents but must construe them "in the light most favorable to plaintiff, drawing all inferences and resolving all factual disputes in his favor, and assuming plaintiff's credibility."  *Sonoco Prods. Co. v. ACE INA Ins.*, 877 F. Supp. 2d 398, 404-05 (D.S.C. 2012) (cleaned up). However, a court "need not credit conclusory allegations or draw farfetched inferences." *Id.* at 405 (internal quotations omitted).

Thus, the lens for evaluating Defendants' personal jurisdiction argument here, *see* Argument, Section D.1, is Rule 12(b)(2).

**C.      Rule 12(b)(6): Failure to State a Claim**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint.  *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).  To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009).  "[A] court may consider documents incorporated into a complaint by reference or attached to a motion to dismiss, provided they are integral to the plaintiff's claims and authentic. . . ." *Loftus v. F.D.I.C.*, 989 F. Supp. 2d 483, 490 (D.S.C. 2013) (citing *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322, (2007))

In evaluating "plausibility," the court may not rely on mere "labels and conclusions" or plaintiff's "formulaic recitation" of the elements of a particular cause of action.  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).  Courts "are not bound to accept as true a legal conclusion

couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Thus, the lens for evaluating the Federal Defendants' sufficiency of the pleadings arguments, *see* Argument, Sections B, C, and E–K is Rule 12(b)(6).

## D.     Rule 56: Motion for Summary Judgment

Rule 12(d) of the Federal Rules of Civil Procedure provides that a court should treat a motion to dismiss as one for summary judgment when matters outside the pleadings are presented in the context of a Rule 12(b)(6) argument. When the movant titles its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings, the parties are on notice that conversion under Rule 12(d) may occur. *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). Here, Plaintiff is on notice that the Court, in its discretion, may treat this Motion as one for summary judgment under Rule 56 because the United States has titled it "in the alternative."

The moving party has the burden to establish the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, the moving party will be granted summary judgment if, with or without accompanying materials, it demonstrates that summary judgment is appropriate. *Id.* at 327 (quoting Fed. R. Civ. P. 1) ("Summary judgment [] is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"). Once the moving party has met this burden, the non-moving party must set forth specific facts showing that a genuine issue of material fact exists through use of affidavits and other evidence.  *Lujan*, 497 U.S. at 884.

Thus, the non-moving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587 (citations omitted).

It is the United States' position that the Complaint, documents referenced therein, and matters appropriate for judicial notice (e.g., Plaintiff's release date) demonstrate that Plaintiff failed to exhaust administrative remedies as required by the PLRA. However, to the extent proof of the administrative filings and rejection notices is necessary, the United States has submitted documentation confirming the lack of PLRA exhaustion and moves, in the alternative, for summary judgment on this issue.

## ARGUMENT

### A. Plaintiff's failure to exhaust administrative remedies under the FTCA deprives the Court of jurisdiction.

#### 1. The United States is the only proper defendant under the FTCA.

As an initial matter, Defendants note that Plaintiff has not named the United States as a defendant in this action. This is fatal to any claims regarding tortious conduct because such claims cannot be asserted against federal agencies or individual federal employees. *See Sheridan v. Rendell*, 465 F. Supp. 2d 528, 531 (D.S.C. 2006). Thus, any FTCA claims against the individual Defendants and the BOP must be dismissed for lack of subject matter jurisdiction. However, granting Plaintiff leave to amend the Complaint to add the United States as a defendant would be futile because Plaintiff failed to exhaust administrative remedies, as explained below.

#### 2. At the time Plaintiff filed the Complaint, Plaintiff had not yet filed an administrative tort claim.

"Absent a statutory waiver, sovereign immunity shields the United States from a civil tort suit." *Kerns*, 585 F.3d at 193-194. The FTCA waives immunity for civil actions seeking damages

for negligent acts or omissions by federal employees "under circumstances where the United States, if a private person, would be liable . . . ." 28 U.S.C. § 1346; *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994)). In so doing, the FTCA and its accompanying regulations also "fix[] the terms and conditions on which suit may be instituted." *Plyler v. United States*, 900 F.2d 41, 42 (4th Cir. 1990). "Precisely because the FTCA constitutes a waiver of sovereign immunity, plaintiffs . . . must file an FTCA action in careful compliance with its terms." *Kokotis*, 223 F.3d at 278.

One such term is the statutory requirement of exhausting an administrative claim, which "is jurisdictional and may not be waived." *Plyler v. United States*, 900 F.2d 41, 42 (4th Cir. 1990) (citing 28 U.S.C. § 2675(a) and *Henderson v. United States*, 785 F.2d 121, 123 (4th Cir. 1986)).[3] The burden of proving subject matter jurisdiction rests with the plaintiff, and, unlike in the Rule 12(b)(6) context, courts may consider evidence outside the pleadings "without converting the proceeding to one for summary judgment." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *Johnson v. Teague*, Civ. A. No. 4:07-3277-RBH, 2008 WL 4065779, at *2 (D.S.C. Aug. 26, 2008).[4] Where a claim is not first presented to the appropriate agency, the district court must dismiss the action for want of subject matter jurisdiction. *McNeil v. United States*, 508 U.S. 106,

---

[3] Although the Supreme Court held the FTCA's statute of limitations in 28 U.S.C. § 2401(b) is not a jurisdictional issue, this holding does not change that the exhaustion requirement in section 2675(a) is jurisdictional. *See United States v. Wong*, 575 U.S. 402, 420 (2015) (assessing only "the FTCA's time bars" in section 2401(b)); *see Wright v. United States*, No. 22-6358, 2023 WL 2010984, at *1 (4th Cir. 2023) (per curiam) (affirming dismissal for lack of jurisdiction where plaintiff did not exhaust).

[4] The undersigned counsel has not attached unpublished decisions to this memorandum because the decisions are, on information and belief, readily available through BOP's electronic law library. *See* Local Civ. Rule 7.05(c)(2) (D.S.C.) (providing that "[c]opies of unpublished decisions not readily available online" shall be attached to legal memoranda). In the event the cited unpublished decisions are not readily available through BOP's electronic law library, Plaintiff may request printed copies of the unpublished decisions from the undersigned counsel.

113 (1993) (upholding dismissal of suit against Government where plaintiff had not exhausted available administrative remedies).

Here, Plaintiff filed his first administrative tort claim on January 23, 2024, and his second claim on January 25, 2024.[5] **Ex. 1 at ¶ 6–7; Ex. 1, Att. B, Administrative Tort Claim TRT-SER-2024-02996; Ex. 1, Att. D, Administrative Tort Claim TRT-SER-2024-02990**. Thus, at the time he filed his Complaint on December 8, 2023, Plaintiff had not presented an administrative tort claim, much less exhausted administrative remedies. *See* 28 U.S.C. § 2675(a) (providing two circumstances that constitute exhaustion: (1) an explicit final denial by the agency or (2) a "deemed" final denial that results when the agency does not "make final disposition of a claim within six months").

Failure to completely exhaust administrative remedies *before* filing an FTCA claim is a jurisdictional defect that cannot be cured by exhaustion after suit is filed. *See McNeil*, 508 U.S. at 112. Thus, the fact that the BOP has since rejected the administrative tort claims does not confer jurisdiction. ***See* Ex. 1, Att. C, Agency Rejection Letter TRT-SER-2024-02996; Ex. 1, Att. E, Agency Rejection Letter TRT-SER-2024-02990**; *McNeil*, 508 U.S. at 107, 113 (answering no to the question of "whether [an FTCA] action may be maintained when the claimant failed to exhaust his administrative remedies prior to filing suit, but did so before substantial progress was made in the litigation"). Neither does the fact that the six-month period has now elapsed since the filing of the administrative claims. *See Plyler*, 900 F.2d at 42 ("Since the district court had no jurisdiction at the time the action was filed, it could not obtain jurisdiction by simply not acting on the motion

---

[5] On December 12, 2023, the Central Office directed Plaintiff to file his administrative claim with the Regional Office. ECF No. 12-4 at 4. Since this correspondence was not a "final denial" and occurred after the Complaint had already been filed, it does not affect the exhaustion analysis.

to dismiss until the requisite period had expired."); *Skinner v. Womack Army Med. Ctr.*, No. 1:19CV572, 2019 WL 6350628, at *4 (M.D.N.C. Nov. 27, 2019) ("The fact that six months has now elapsed since the filing of her administrative tort claim is immaterial . . . .").

Like the plaintiffs in *McNeil*, *Plyler*, and *Skinner*, Plaintiff failed to exhaust administrative remedies under the FTCA before filing this lawsuit. Consequently, the Court is without jurisdiction to entertain any tort claims in the Complaint (i.e., intentional infliction of emotional distress, negligence, and malpractice). Neither the expiration of six months since the administrative claim was filed, nor the BOP's rejection of the administrative claims after the filing of the Complaint can cure that jurisdictional defect.

**B.     Exhaustion through BOP's Administrative Review Program is mandatory, and Plaintiff failed to exhaust his administrative remedies.**

**1.     PLRA Exhaustion**

In 1995, Congress enacted the Prison Litigation Reform Act ("PLRA"). The PLRA revised the exhaustion provision of 42 U.S.C. § 1997 as follows:

> (a) Applicability of administrative remedies
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility **until such administrative remedies as are available are exhausted.**

42 U.S.C. § 1997e(a) (emphasis added). In *Porter v. Nussle*, 534 U.S. 516, 524 and 532 (2002), the Supreme Court held that exhaustion of administrative remedies is mandatory and applies to *Bivens* claims just as it "applies to all inmate suits about prison life . . . ."

**2.     The BOP's Administrative Remedy Procedure**

The BOP has a three-tiered formal administrative remedy program ("ARP"), although there is also an informal resolution process. *See* 28 C.F.R. § 542.10 *et seq.* An inmate may complain about any aspect of his confinement by first seeking to informally resolve the complaint (Form

BP-8) at the institution level. 28 C.F.R. § 542.13. If the matter cannot be resolved informally, the inmate may file a "formal written Administrative Remedy Request" (Form BP-9) within 20 calendar days "following the date on which the basis for the Request occurred." 28 C.F.R. § 542.14. In all cases, the matter will be investigated, and a written response provided to the inmate. 28 C.F.R. § 542.14. If dissatisfied with the response, the inmate may appeal to the Regional Director (Form BP-10) within 20 days of the date of the Warden's response. 28 C.F.R. § 542.15(a). In a sensitive situation, where "the inmate reasonably believes . . . the inmate's safety or well-being would be placed in danger if the Request became known at the institution, the inmate may submit the Request directly to the appropriate Regional Director." 28 C.F.R. § 542.24(d)(1). If dissatisfied with the regional response, the inmate may appeal to the General Counsel (Form BP-11) within 30 days of the Regional Director's response. 28 C.F.R. § 542.15(a). This level is also referred to as the Central Office. *See generally* 28 C.F.R. § 542.15.

"Appeal to the General counsel is the final administrative appeal." *Id.* Thus, an administrative remedy has not been exhausted until it has been answered by the General Counsel or been deemed denied by virtue of the passage of forty calendar days without a response. 28 C.F.R. § 542.18.

### 3.    Plaintiff's Administrative Remedy Requests

On November 7, 2023, Plaintiff initiated a BP-8 seeking informal resolution to complaints on a number of matters. ECF No. 12-4 at 5. The correctional counselor responded the next day. *Id.* On December 6, 2023, while still incarcerated at FCI Edgefield, Plaintiff filed his Complaint in federal court. ECF No. 1. On December 8, 2023, Plaintiff filed a BP-11 with the Central Office, effectively skipping the Warden (Form BP-9) and Regional Director (BP-10) steps. ECF No. 12-2 at 6; ECF No. 12-4 at 1. Indeed, the rejection notice shows that, on December 13, 2023, the BOP

rejected Plaintiff's administrative remedy for this issue. ECF No. 12-4. Rather than correct this deficiency, Plaintiff filed another administrative remedy with the Central Office saying that he should be excused from filing at the Warden level "due to the sensitive nature" of his allegations. ECF No. 12-4. In this document, Plaintiff did not explain why he felt he could not raise this issue to the Regional Director. A review of BOP's records confirms the above. **Ex. 1, Att. F, SENTRY Administrative Remedy Generalized Retrieval**.

4. **Plaintiff's administrative remedy requests do not constitute proper exhaustion under the PLRA for two reasons.**

    i. **Plaintiff filed his federal Complaint before his administrative remedy requests.**

"No action shall be brought with respect to prison conditions . . . until such administrative remedies as are available are exhausted." 42 U.S.C § 1997e(a). Thus, a plaintiff cannot exhaust administrative remedies under the PLRA after a Complaint has been filed. *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) ("The plain language of the statute makes exhaustion a precondition to filing an action in federal Court . . . ."); *see also Byrd v. Stirling*, 144 F. Supp. 3d 803, 808 (D.S.C. 2015) (holding that grievances that an inmate submitted to prison after he filed suit could not satisfy exhaustion requirement, as inmates "may not exhaust administrative remedies during the pendency of the federal suit") (quoting *Freeman*).

Plaintiff's subsequent release from custody on January 12, 2024, does not change the result. "[I]t is the plaintiff's status at the time he filed the lawsuit that is determinative as to whether the [section 1997e(a)] exhaustion requirement applies." *Cofield v. Bowser*, 247 F. App'x 413, 414 (4th Cir. 2007). It is beyond dispute that Plaintiff was incarcerated in FCI Edgefield at the time he filed the Complaint.

    ii. **Plaintiff impermissibly skipped two steps in the ARP and filed directly with the Central Office.**

Even if the Court were to excuse the fact that Plaintiff filed his Complaint before he filed his administrative remedy requests, which it should not, Plaintiff's Complaint only references that he filed a Form BP-11 with the Central Office, effectively skipping the Warden (Form BP-9) and Regional Director (Form BP-10) steps. ECF No. 12-2 at 6; ECF No. 12-4 at 1. The Supreme Court has held that *proper* exhaustion of administrative remedies is necessary before filing suit, which means inmates must comply "with an agency's deadlines and other critical procedural rules." *See Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "[A] prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Id.* at 93. The Supreme Court has observed that, especially in a prison context, "aggrieved parties may prefer not to exhaust administrative remedies for a variety of reasons." *Id.* at 89–90, n.1. If Plaintiff felt this was a sensitive matter, it was incumbent upon him to comply with 28 C.F.R. § 542.24(d)(1) and submit the remedy to the Regional Director. Having failed to comply with 28 C.F.R. § 542.24(d)(1), Plaintiff did not properly exhaust administrative remedies. Consequently, any *Bivens* claims should be dismissed.

### 5. The BOP's ARP was "available" to Plaintiff.

Plaintiff asserts that individuals denied him resources, including administrative remedy forms, that they impeded the ARP process, and "fail[ed] to permit" him to exhaust remedies. ECF No. 1 at 12; ECF No. 1-4 at 14. Presumably, these allegations forecast an argument that the ARP was not available to him. And it is true that section 1997(e)(a) limits the exhaustion requirement to *available* remedies, even though a court, on its own, cannot allow special circumstances to excuse a failure to exhaust. *See Ross v. Blake*, 578 U.S. 632, 643 (2016) (discussing this distinction, listing only three situations where the ARP would not be available to inmates, and noting "these circumstances will not often arise"). But assertions like the ones in this case are

insufficient to excuse a failure to exhaust. *Jones v. United States*, No. 4:18-1734-DCC-TER, 2019 WL 3360644, at *4 (D.S.C. June 24, 2019), report and recommendation adopted, No. 4:18-1734-DCC-TER, 2019 WL 3345997 (D.S.C. Jul. 25, 2019). In *Jones*, the Court found that the assertion that "BOP staff constantly precluded" the inmate from filing administrative remedies was not sufficient to render the process unavailable because the inmate did not allege "that he took the necessary steps as outlined in the [ARP] if a response is not received." *Id.* The same result follows here.

Moreover, Plaintiff's argument on this point is contradicted by his own statements that he acquired ARP forms. *See* ECF No. 1-5 at 9 (alleging Defendant Parker provided him forms); ECF No. 1-5 at 10 (alleging Defendant Thorpe provided him a BP-8 form); ECF No. 1 at 18 (alleging he obtained forms from "other inmates"); ECF No. 1-5 at 11 (alleging Defendant Barsh responded to his BP-8). It is also discredited by the attachments to the Complaint, which demonstrate Plaintiff was able to correspond by mail with a BOP counselor and the Central Office while in the SHU. ECF No. 12-4 at 1–2; 15–16; *see Stohl v. E. Reg'l Jail*, Case No. 1:14CV109, 2015 WL 5304135, at *7 (N.D. W. Va. Sep. 8, 2015) (holding that an allegation that prison staff "discarded" his grievances "not only is unsupported by any evidence in the record, but is belied" by plaintiff's successful filing of other grievances during same time period).

Lastly, Plaintiff may perhaps respond that he was excused from complying with the ARP because his counselor understood him to be complaining about inadequate medical treatment and advised him to file a tort claim rather than a BP-8. *See* ECF No. 12-4 at 5 and 15 (stating that his counselor was "misguided"). However, the counselor's statement was inconsequential because Plaintiff continued to pursue his administrative remedy after receiving this BP-8 response. At that time, the Central Office informed Plaintiff of the proper steps to take and he failed to do so. On

balance, the information in Plaintiff's Complaint suggests he simply preferred to quickly proceed to federal court and seek money damages under *Bivens*, versus presenting his concerns through the ARP and providing the BOP an opportunity to address them.

There is no basis to conclude that Plaintiff was denied access to the Warden or Regional Director Levels to properly exhaust his administrative remedy.[6] To allow inmates to bypass the ARP by suing everyone in their orbit (including a warden, regional director, and the Director of the BOP) would render the PLRA a nullity.

### 6. Plaintiff's administrative remedy requests did not mention excessive force; therefore, he did not exhaust administrative remedies as to that claim.

Finally, even if the Court finds Plaintiff's BP-8 and BP-11s constitute proper exhaustion, despite the deficiencies cited above, these documents only operate to exhaust as to the allegations made therein. Neither his BP-8 nor either of his two BP-11s mention anything about excessive force or an altercation with Defendants Pistory and Howard. ECF No. 12-4 at 5, 15–16. Thus, as to his excessive force claim, Plaintiff has presented no information to plausibly allege that he even attempted to exhaust administrative remedies as to this claim.

### C. Plaintiff fails to state a claim for relief under the ADA or the Rehabilitation Act.

The Court has construed Plaintiff's Complaint as raising a claim under the ADA. *See* ECF No. 24, p. 4. Any claim under the ADA is subject to dismissal because "[i]t is well established that the ADA does not apply to the federal government, its agencies, or employees." *Hopper v. Fed. Bureau of Prisons*, No. 5:18-cv-01223-MGL-KDW, 2018 WL 3750553 (D.S.C. July 5, 2018),

---

[6] To be sure, Plaintiff's credibility on these points is compromised. For example, he now alleges that he handed a BP-9 to the Warden directly on October 18, 2023. ECF No. 1-5 at 6. Yet when the Central Office rejected his BP-11 because he did not first appeal to the Warden, Plaintiff makes no mention of this supposed interaction, referencing only his BP-8 that was submitted on November 7, 2023. ECF No. 12-4 at 15.

*report and recommendation adopted*, No. 5:18-cv-01223-MGL-KDW, 2018 WL 3938076 (D.S.C. Aug. 7, 2018). To the extent the Court construes the claims as being alleged under the Rehabilitation Act, any claim under the Rehabilitation Act for money damages fails because sovereign immunity bars Rehabilitation Act claims for damages against agencies relating to programs and activities that they conduct. *Lane v. Pena*, 518 U.S. 187, 197 (1996). Moreover, individual defendants cannot be liable in their individual capacities. *See Nolan v. Hamidullah*, No. 4:07-1141-JFA-TER, 2009 WL 2982746, at *5 (D.S.C. Sept. 10, 2009) (citing *Pathways Psychosocial v. Town of Leonardtown*, 133 F. Supp. 2d 772 (D. Md. 2001)). Thus, any claims under the ADA or the Rehabilitation Act should be dismissed.

**D.      Other Threshold Deficiencies**

Plaintiff's *Bivens* claims, FTCA claims, and ADA claims are subject to dismissal for the reasons described above. Thus, Plaintiff's entire case is subject to dismissal. However, to the extent any claims remain, certain Defendants and certain claims for relief are subject to summary dismissal for the reasons explained below.

**1.      The Court Lacks Personal Jurisdiction over Defendants Regional Director Phelps and Director Peters**

Federal courts exercise personal jurisdiction in the manner provided by state law. Fᴇᴅ. R. Cɪᴠ. P. 4(k). In South Carolina, jurisdiction is a two-step process, first examining the applicability of the South Carolina long arm statute and then examining whether jurisdiction violates the due process clause. *See S. Plastics Co. v. S. Commerce Bank,* 423 S.E.2d 128, 130 (S.C. 1992). Because the South Carolina Supreme Court has held that the South Carolina long arm statute is deemed to reach the limits of due process, federal courts normally conduct a single inquiry under the due process clause. *Fed. Ins. Co. v. Lake Shore, Inc.,* 886 F.2d 654, 657 n. 2 (4th Cir.1989).

The due process clause prohibits personal jurisdiction over Defendants Phelps and Peters. That clause "protects an individual's liberty interest in not being subject to binding judgments of a foreign state with which the individual has no meaningful contacts." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985); *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 319 (1945). The United States Supreme Court articulated a two-branch due process test for determining specific jurisdiction. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291(1980). The first, the traditional minimum contacts branch, focuses on the defendant's connection with the forum state and the relationship between that connection and the litigation. *Burger King Corp.,* 471 U.S. at 471–76. The second branch is frequently referred to as the fairness, convenience, or reasonableness branch. Beyond the requirement of minimum contacts, due process requires further factual evaluation to determine whether an assertion of personal jurisdiction comports with fair play and substantial justice. *Id.* at 476. Due process requires that a non-resident defendant have certain minimum contacts with the forum sufficient to guarantee that the assertion of personal jurisdiction does not offend "traditional notions of fair play and substantial justice." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).

As to Defendants Regional Director Phelps or Director Peters, Plaintiff does not allege that they transacted business, entered into any contract, or committed a wrongful act in South Carolina. *See generally* ECF Nos. 1, 1-1, 1-4, 1-5, 12-2 and 12-4. In fact, Plaintiff makes no allegations whatsoever against these Defendants. Rather, they are referenced by title only, and only with regard to administrative remedies Plaintiff may have been seeking related to this case. ECF No. 1-4 at 17; ECF No. 1-5 at 13.

Defendant Phelps is the Regional Director for the Southeast Region of the BOP and has held that position since March 26, 2023. **Ex. 1**. Prior to that promotion, he was the Senior Deputy Assistant Director at the Southeast Regional Office beginning on January 11, 2021. *Id*. His business office is located at the Southeast Regional Office in Atlanta, Georgia. Defendant Phelps is not involved in the day-to-day operations of FCI Edgefield. *Id.*

Defendant Peters is the former Director of the Federal Bureau of Prisons and held that position from August 2, 2022, until January 20, 2025. **Ex. 1**. Her business office was located at the BOP's Central Office in Washington, D.C. *Id*. Defendant Peters was not involved in the day-to-day operations of FCI Edgefield. *Id*.

Subjecting Defendants Phelps and Peters to personal jurisdiction in South Carolina would offend traditional notions of fair play and substantial justice, particularly where there are no allegations in the Complaint against them. *See McKubbin v. Pettiford*, No. 8:08-3248-HMH-BHH, 2009 WL 3245486, at *5 (D.S.C. Oct. 1, 2009) (finding that the "handling of the plaintiff's administrative appeals from their home offices" was not sufficient contacts to allow the exercise of personal jurisdiction over BOP employees in the regional and central offices).

As there are no substantive allegations in the Complaint against these Defendants, Plaintiff cannot meet his "burden of proving to the district court judge the existence of jurisdiction over the defendant." *New Wellington Fin. v. Flagship Resort Dev.*, 416 F.3d 290, 294 (4th Cir. 2005). Accordingly, Defendants Phelps and Peters should be dismissed from this action for lack of personal jurisdiction.

### 2. Defendants Anderson, Dorsey, Julian, and Newcomb are U.S. Public Health Service Employees and have absolute immunity.

Defendants Anderson, Dorsey, Julian, and Newcomb are Commissioned Officers in the United States Public Health Service ("PHS") and were such during the time referenced in the

Complaint. **Ex. 2–5**. As PHS employees, these individuals are entitled to absolute immunity and must be dismissed from this action pursuant to Rule 12(b)(1). *Hui v. Castaneda*, 559 U.S. 799 (2010) ("[42 U.S.C. § 233(a)] grants absolute immunity to PHS officers and employees for actions arising out of the performance of medical or related functions within the scope of their employment by barring all actions against them for such conduct.") Indeed, section 233(a) precludes an action under *Bivens* against PHS personnel. *Id.* at 802. Accordingly, Defendants Anderson, Dorsey, Julian, and Newcomb are entitled to absolute immunity and should be dismissed from this action.

### 3. Plaintiff's injunctive and declaratory claims were mooted by his release.

Plaintiff's initial Complaint in this matter sought injunctive and declaratory relief. ECF No. 1 at 3 and 22. As previously noted, Plaintiff was released from FCI Edgefield on January 12, 2024, and is not currently in BOP custody. It is well established that a "prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there." *Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009) (citing *Incumaa v. Ozmint*, 507 F.3d 281, 286-87 (4th Cir. 2007). Given Plaintiff's release, he is not under the care of the Defendants in this action, and any injunctive or declaratory relief sought is moot.

## E. *Bivens* claims may only be brought against individuals in their individual capacities.

Plaintiff indicates he is suing each Defendant in their individual and official capacities. However, as the Supreme Court explained:

> If a federal prisoner in a BOP facility alleges a constitutional deprivation, he may bring a *Bivens* claim against the offending individual officer, subject to the defense of qualified immunity. The prisoner may not bring a *Bivens* claim against the officer's employer, the United States, or the BOP. With respect to the alleged constitutional deprivation, his only remedy lies against the individual.

*Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 72 (2001); *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (holding a suit against a public employee in his or her official capacity is actually a suit

against the public employer). Therefore, any *Bivens* claims against the BOP or individual Defendants in their official capacities should be summarily dismissed for lack of subject matter jurisdiction. *See Doe v. Chao*, 306 F.3d 170, 184 (4th Cir. 2002).

**F.     Plaintiff fails to state a *Bivens* claim against any of the individual Defendants in their individual capacities.**

The Court has found Plaintiff purports to allege violations of his constitutional rights under the First, Eighth, and Fifth Amendments.[7] ECF No. 24. More specifically, Plaintiff appears to allege retaliation and interference with access to the courts and the administrative remedy process under the First Amendment; a due process violation in his disciplinary action and confinement in the SHU under the Fifth Amendment; failure to protect, deliberate indifference to serious medical needs, unconstitutional conditions of confinement, and the use of excessive force under the Eighth Amendment.

Under the Supreme Court's decisions in *Egbert v. Boule*, 596 U.S. 482 (2022), which clarified the framework for assessing the viability of a *Bivens* action, Plaintiff's claims against the individual Defendants must be dismissed.

**1.     The *Bivens* Framework**

The ability to sue a federal employee individually under the Constitution is "not an automatic entitlement." *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007). Indeed, there are only three cases in which the Supreme Court has recognized such a remedy: *Bivens*, 403 U.S. 388; *Davis v. Passman*, 442 U.S. 228 (1979); and *Carlson v. Green*, 446 U.S. 14 (1980). "Since these cases, the Court has not implied additional causes of action under the Constitution." *Egbert*, 596 U.S. at 491.

---

[7] Because Plaintiff was a sentenced federal prisoner, his rights would be established under the Fifth Amendment rather than the Fourteenth Amendment, which applies to the states.

Although the Supreme Court has not overruled *Bivens*, "recognizing a cause of action under *Bivens* is a 'disfavored judicial activity.'" *Id.* at 491 (citing *Ziglar v. Abbasi*, 582 U.S. 120 (2017)).

> Evaluating the viability of a *Bivens* claim involves two familiar steps:
>
> First, we ask whether the case presents a new *Bivens* context—*i.e.*, is it meaningful[ly] different from the three cases in which the Court has implied a damages action. Second, if a claim arises in a new context, a *Bivens* remedy is unavailable if there are special factors indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed.
>
> *Egbert*, 596 U.S. at 492 (internal quotations and citations omitted).

**2.    Plaintiff's claims arise in a new context and special factors counsel against extending *Bivens* to this new context.**

**a.    First Amendment Claims**

In his Complaint, Plaintiff provides a summary of how he contends Defendants violated his rights under the First Amendment. ECF No. 1 at 12–14. First, Plaintiff alleges Newcomb, Pistory, Young, and John Doe "directed failure to permit" Plaintiff to raise concerns and medical treatment and conditions of conferment. *Id.* at 12. Second, Plaintiff alleges Defendants Janson, Lemos, Newcomb, and Pistory placed him in SHU in retaliation for raising concerns. *Id.* Third, Plaintiff alleges Defendants Bray, Barsh, Evans, Hamilton, Janson, Pistory, and Randolph "failed to permit" him to exhaust administrative remedies. *Id.* Fourth, Plaintiff alleges the John Doe Defendants opened his mail. *Id.* Fifth, Plaintiff alleges that "medical staff" and Defendants Young Newcomb, and Julian did not provide him with requested medical documents. *Id.* at 13. Sixth, Plaintiff alleges Defendant Nevils conducted a disciplinary hearing and failed to provide a copy of the Plaintiff's Discipline Hearing Officer (DHO) Report and interfered with Plaintiff's remedy or appeal process. *Id.* at 13. However, First Amendment claims, such as these, are not cognizable under *Bivens*. *See Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012) ("We have never held that

Bivens extends to First Amendment claims."). Thus, to the extent the individuals listed above are not dismissed on other grounds, the Court should dismiss any First Amendment claim against them for damages.

The Fourth Circuit has determined that First Amendment cases present a new context for *Bivens* purposes. *Earle v. Shreves*, 990 F.3d 774, 779 (4th Cir. 2021) (foreclosing inmate's First Amendment *Bivens* claim of retaliation for filing grievances); *Doe v. Meron*, 929 F.3d 153, 169 (4th Cir. 2019) ("The Supreme Court has not recognized a *Bivens* remedy for an alleged violation of the First Amendment."). In *Earle*, the Court further found that special factors counseled hesitation in implying a cause of action: "Given the ease with which an inmate could manufacture a claim of retaliatory detention, allowing a *Bivens* action for such claims could lead to an intolerable level of judicial intrusion into an issue best left to correctional experts." *Id*. at 780. As such, the Court refused to extend *Bivens* to a situation where an inmate alleged he was placed in the SHU in retaliation for filing grievances. *Id.* at 779

Indeed, this Court has dismissed First Amendment *Bivens* claims, like the ones Plaintiff raises here. *Williams v. Lynch, et al.*, No. 1:16-cv-3043-DCC-SVH, 2018 WL 4140667, at *3 (D.S.C. Aug. 30, 2018) (no *Bivens* remedy for "claims for retaliation, denial of access to courts, or unconstitutional conditions of confinement"); *Curry v. Olberding*, No. 1:21-1300-HMH-SVH, 2022 WL 791925, *report and recommendation adopted*, No. 1:21-1300-HMH-SVH, 2022 WL 788874 (D.S.C. Feb. 3, 2022) (no *Bivens* remedy for claims of retaliatory discipline, interference with mail, and interference with administrative remedies); *Jones v. Antonelli*, No. 6:19-3036-MBS-KFM, 2020 WL 6292486, at *5 (D.S.C. Jan. 15, 2020), *report and recommendation adopted,* 2020 WL 5557841 (D.S.C. Sep. 17, 2020) (no *Bivens* remedy for money damages pursuant to claims of retaliatory discipline).

Plaintiff's allegations are not meaningfully different from the facts of the cases cited above. Accordingly, this Court should decline to allow a *Bivens* remedy for alleged First Amendment violations.

  **b.**  **Fifth Amendment Claims**

Though not specifically enumerated, Plaintiff's Fifth Amendment claim appears to center around the events that followed his confrontation with Pistory, related to Defendant Nevils (DHO report allegations) and Defendants Screws and Gianelli (falsified medical report allegations).[8] Such claims are not cognizable under *Bivens*.

Although *Davis* recognized an implied remedy for a violation of the Fifth Amendment, that case addressed a gender discrimination claim against a Congressman for firing his female secretary. *See Davis*, 442 U.S. at 234 (analyzing plaintiff's claim in the context of the "equal protection component of the Due Process Clause"). The allegations in *Davis* do not resemble Plaintiff's allegations concerning false or retaliatory disciplinary charges. Indeed, the Fourth Circuit recently found that a *Bivens* remedy was foreclosed where an inmate attempted to bring claims for money damages against prison employees for violations of due process and equal protection. *Mays v. Smith*, 70 F. 4th 198, 200 (4th Cir. 2023). The Court noted that this was a new context under *Bivens,* and special factors counseled hesitation, including the ARP and that the statutory scheme delegated authority to BOP for housing decisions and prison discipline. *Id.* This Court has consistently applied this logic in cases where inmates assert a Fifth Amendment violation. *See Curry*, 2022 WL 791925, at *7 (noting that Fifth Amendment due process and equal protection claims are new contexts to which Bivens should not be extended); *Johnson v.*

---

  [8] Plaintiff alleges the excessive force incident violated the due process clause. ECF No. 1 at 18. However, excessive force claims arise, if at all, under the Eighth Amendment, not the Fifth or Fourteenth.

*Thompson*, C/A No. 4:23-3558-SAL-TER, 2023 WL 7091970 (D.S.C. Sept. 14, 2023), *report and recommendation adopted*, 2023 WL 7077793 (D.S.C. Oct. 26, 2023) (dismissing claims similar to those raised in this case); *Gardner v. Janson,* C/A No. 5:19-2616-CMC, 2021 WL 4472800 (D.S.C. Sept. 30, 2021) (declining to extend *Bivens* to equal protection and due process claims for religious discrimination, finding claims presented a new context and special factors counseled hesitation).

Accordingly, to the extent a Fifth Amendment claim is asserted, the Court should dismiss any due process claims related to Plaintiff's placement and duration in SHU, disciplinary actions, or falsified medical records.

### G.     Eighth Amendment Claims

#### i. Conditions of Confinement

Plaintiff complains that he was subjected to unconstitutional conditions of confinement due to mold, lack of heat, power outages, being placed in a cell with an inmate who threw urine and feces and spit, among other grievances with the prison environment that are too numerous to recount here. Plaintiff faults numerous individuals for such issues, and his collective manner of pleading makes it impossible to sort out exactly who Plaintiff contends was responsible. *See* Argument Section F.2, *infra* (arguing Plaintiff cannot state a Bivens claim by charging a list of individuals with misconduct). However, to the extent the Court considers these allegations to attribute wrongdoing to specific individuals, they are nevertheless subject to dismissal.

In *Tate v. Harmon*, the Fourth Circuit declined to extend *Bivens* to an inmate's claim of unconstitutional conditions of confinement in SHU:

> that he was sent to the prison's Special Housing Unit as punishment after a correctional officer filed a retaliatory incident report that falsely claimed that Tate had made threatening and sexually aggressive comments to the officer while also behaving uncooperatively during a headcount. He alleged that the conditions in the

> [SHU] to which he was sent were so degrading and detrimental that they constituted cruel and unusual punishment, in violation of the Eighth Amendment. He alleged that his cell was filthy and covered with mold; that the temperatures in his cell could be extraordinarily cold; that he was given soiled and inadequate bedding; that he was provided undersized toilet paper and a virtually unusable toothbrush; that he was not provided adequate cleaning supplies; that prison guards made it difficult or impossible for him to use the one hour per day that he was supposed to be allowed outside his cell; and that prison guards intentionally endangered him by falsely telling other inmates that he had exposed himself and made sexual overtures to male prison guards.

54 F.4th 839, 842 (4th Cir. 2022). This Court has also declined to extend a *Bivens* remedy to an inmate's claim of unconstitutional conditions of confinement. *Clemmons*, No. 0:16-CV-1305-DCC, 2018 WL 4959093, at *6 (D.S.C. Oct. 15, 2018); *Fuquea v. Mosley*, No. 1:19-1392-HMH-SVH, 2020 WL 3848150, at *6-7 (D.S.C. Mar. 6, 2020), *report and recommendation adopted,* 2020 WL 1899493 (D.S.C. Apr. 16, 2020).

In *Clemmons*, this Court held that an inmate's claim that he was subjected to unconstitutional conditions of confinement in violation of the Eighth Amendment presented a new context and that it would be "improper to create a new remedy under *Bivens*." 2018 WL 4959093, at *6. In *Fuquea v. Mosley*, this Court again found that an Eighth Amendment conditions of confinement claim presented a new *Bivens* context and that there were special factors counseling hesitation, as the plaintiff had alternative remedies available to him, and Congress was better suited to determine whether to provide a damages remedy. 2020 WL 3848150, at *6–7.

Accordingly, the Court should dismiss any due process claims related to the conditions of Plaintiff's confinement in the SHU.

### ii. Failure to Protect

Plaintiff alleges that Defendants, including Davis, Morgan, Evans, Morales, Bonorden, Ferry, and Hamilton, and presumably the supervisory Defendants, failed to protect him from the alleged assault in which his cellmate purportedly threw feces and urine at him and spat upon him.

ECF No. 1 at 5. Plaintiff alleges two hours elapsed before they responded, at which time they brought him a change of clothes and allowed him to shower. *Id.* Plaintiff may also be alleging that Defendants Wells and Screws failed to protect him during and after his altercation with Pistory. *Id.* at 16; ECF No. 1-5 at 3. These claims ostensibly arise under the cruel and unusual punishment clause of the Eighth Amendment.

However, such a claim is not viable under *Bivens* because "[n]o case has extended *Bivens* to claims that BOP employees violated the Eighth Amendment by failing to protect an inmate from other staff members." *Chambers v. Herrera*, 78 F.4th 1100, 1106 (9th Cir. 2023). Additionally, the Fourth Circuit considered a failure to protect claim and found no *Bivens* remedy existed because "Congress has expressed a desire to prevent courts from interfering with BOP decisions," has been "conspicuously silent about creating a remedy for prisoners to obtain damages from individual officers," and "the existence of the ARP and PLRA counsel hesitation in extending *Bivens*." *Bulger v. Hurwitz*, 62 F. 4th 127, 141 (4th Cir. 2023). This Court has relied on *Bulger* to find that an inmate plaintiff failed to state a claim in alleging a staff member failed to protect him from an attack by other inmates. *See Johnson v. Thompson*, No. 4:23-3558-SAL-TER, 2023 WL 7091970, at *3 (D.S.C. Sept. 14, 2023), *report and recommendation adopted*, 2023 WL 7077793 (D.S.C. Oct. 26, 2023).

Accordingly, the Court should dismiss any *Bivens* claims related to an alleged failure to protect him.

### iii.  Deliberate Indifference to Serious Medical Needs

As to Plaintiff's claim for deliberate indifference to serious medical needs in violation of the Eighth Amendment, Plaintiff alleges Defendant Gianelli photographed his injuries (abrasion and shoulder pain) within an hour of the incident. ECF No. 1 at 17. He further alleges that

Defendant Wohlgemuth and Gianelli falsified records, but fails to allege factual details as to what exactly he thinks occurred. *Id.* Plaintiff further alleges that he received a medical evaluation for these injuries the same day, but objects to the fact that he has not received medical evaluations since. *Id*. Also, in sections of the Complaint alleging violations of the ADA, Plaintiff objects to the fact that his seizure medication was provided to him crushed as a powder in water and alleges that he did not have access to this medication in the SHU. ECF No. 1 at 10; ECF No. 12-4 at 2. As best Defendants can discern, Plaintiff alleges Defendants Taylor, Velez, Brabham, Rodriguez, and Wohlgemuth failed to properly administer the medication. He alleges Defendant Young instructed these individuals to crush the seizure medication and to act with negligence and deliberate indifference towards his medical treatment for seizures. ECF No. 1-4 at 13. While Plaintiff also identifies Defendant Dorsey in relation to this claim, Dorsey has absolute immunity.

     *Carlson* is the only prior *Bivens* case with any similarities.  *See Carlson*, 446 U.S. at 14. Yet, while *Carlson* also involved an Eighth Amendment claim alleging deliberate indifference to an inmate's medical needs, *id.* at 16 n.1, a claim may present a new context even if it involves the same "constitutional right" and "mechanism of injury" as a prior *Bivens* case.  *Ziglar*, 582 U.S. at 146-47; *Tate v. Harmon*, 54 F.4th 839, 845-46 (4th Cir. 2022) ("While the claim authorized in *Carlson* was, to be sure, also an Eighth Amendment claim, it nonetheless arose in a context different from [plaintiff's].").

     In *Carlson*, an inmate died after prison officials kept him in an inadequate facility and failed to competently treat him for an asthmatic attack (i.e., administering contraindicated drugs, attempting to use an inoperative respirator, and delaying in sending him to an outside hospital). 446 U.S. at 16, n.1.  Since the case was decided, "the Supreme Court has made clear that courts should not interpret *Carlson* to apply outside the precise context at issue in that case."  *Bulger v.*

*Hurwitz*, 62 F.4th 127, 138 (4th Cir. 2023) (citing *Ziglar*, 582 U.S. at 138-39). The Fourth Circuit has called *Carlson* "narrow and discrete, implicating well-established criteria for liability and damages." *Tate*, 54 F.4th at 846.

Here, Plaintiff allegedly experienced minor injuries (abrasion and shoulder pain) following an altercation. The factual allegations regarding this incident confirm that the medical neglect and incompetence prevalent in *Carlson* are not present here. While Plaintiff vaguely claims records were "falsified" and that he did not receive unspecified follow-up treatment, he omits even the most basic details as to what further treatment was necessary and what, if any, consequences he experienced as result. It is readily apparent that a minor shoulder injury is not the type of "serious medical needs" that implicates the cruel and unusual punishment clause of the Eighth Amendment.

Similarly, the allegation that medical staff provided him crushed medication rather than pills is insufficient to state a claim. Plaintiff admits these individuals explained that the medication was being provided consistent with policy and his medical provider's instruction. ECF No. 12-4 at 12 (explaining how Plaintiff became belligerent at this explanation and threw his medication in the trash); ECF No. 12-4 at 10, 13 (documenting that Plaintiff's medical chart called for the prescription to be crushed). The Court may also take judicial notice of the fact that Vimpat (lacosamide) is a Schedule V drug, 21 C.F.R. § 1308.15(e)(5), and that, by BOP policy, "controlled substances taken by mouth are crushed or administrated in liquid form," **Ex. 6. BOP Program Statement (P.S.) 6360.02, Pharmacy Services, at 13 and 19**. Providing medication consistent with a medical provider's instruction and BOP policy does not show the medical staff who cared for Plaintiff were indifferent to his medical needs. *See* ECF No. 1-4 at 13 (Plaintiff admitting that certain individuals had been instructed to administer the medication in powder form by Plaintiff's

doctor). If anything, Plaintiff's allegations show a disagreement with a course of treatment, which cannot serve as the basis for an Eighth Amendment claim.

As to Plaintiff's allegations regarding lack of treatment for epilepsy, he seems to allege that everyone with whom he interacted while in the SHU failed to assist him. At times, Plaintiff charges the "entire medical department" at FCI Edgefield with misconduct. ECF No. 12-4 at 7. The Complaint's narrative of a conspiracy to deprive him of medical treatment is unlike the specific allegations of identifiable conduct by certain individuals that was present in *Carlson*.

Lastly, Plaintiff generally alleges he suffered "brain damage." ECF No. 1 at 20; ECF No. 1-4 at 13. But he does not support this with any factual allegations to show the nature of this supposed injury and how, if at all, his medical treatment at FCI Edgefield caused it.

In these ways, Plaintiff's medical indifference claim is a new *Bivens* context. *See Washington v. Fed. Bureau of Prisons, et al,* C/A No. 5:16-cv-3913, 2022 WL 3701577, at *5 (D.S.C. Aug. 26, 2022) (new context and declined to extend *Bivens* remedy where plaintiff alleged defendants failed to provide medical and personal assistance that he required due to blindness); *Garcia v. Barnes*, C/A No. 9:23-cv-01877-SAL-MHC, 2024 WL 3403051, at *7 (D.S.C. June 13, 2024), *report and recommendation adopted*, 2024 WL 3400911 (D.S.C. Jul. 12, 2024) (finding a claim that the plaintiff was denied medication while in the SHU raised a new context); *Alvarado v. Fed. Bureau of Prisons*, C/A No. 0:22-1723-JD-PJG, 2023 WL 4089490, *6-7 (D.S.C. May 10, 2023), *report and recommendation adopted*, 2023 WL 4088829 (D.S.C. June 20, 2023) (no *Bivens* claim for deliberate indifference to serious medical needs where claim did not involve medical emergency nor an acute injury) (citing *Washington*); *McNeal v. Hutchinson, et al*, No. 2:21-cv-3431, 2022 WL 16631042, at *2-3 (D.S.C. Nov. 2, 2022) (new context and declined to extend *Bivens* remedy where plaintiff alleged defendants failed to provide adequate medical treatment for

a chronic medical condition). The question, thus, becomes whether there are special factors counseling against extension of *Bivens* to the circumstances at hand. *Egbert*, 596 U.S. at 492. Under the special factors analysis, "a court faces only one question: whether there is any rational reason (even one) to think that Congress is better suited to weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 496 (cleaned up). The Supreme Court has cautioned that the decision to "establish whole categories of cases in which federal officers must defend against personal liability claims." In this case, familiar special factors counsel against recognizing a *Bivens* remedy for a deliberate indifference claim based on a situation like Plaintiff's.

First, Plaintiff had "full access to remedial mechanisms established by the BOP, including suits in federal court for injunctive relief and grievances filed through the BOP's [ARP]." *Malesko*, 534 U.S. at 74; *see also Egbert*, 596 U.S. at 497 (citing BOP's ARP as a special factor that renders a *Bivens* claim unavailable); *Bulger*, 62 F.4th at 140-141 (same). Although Plaintiff alleges he was thwarted in his attempts to file administrative remedies, this is flatly contradicted by the information presented in the Complaint showing he filed multiple administrative documents and received responses from the BOP every time. BP-8, BP-11, BP-11, Tort claim, Tort claim. To the extent Plaintiff felt he was being denied treatment for shoulder pain or experiencing undue delay in receiving a prescription refill, there is no reason he could not have raised that issue to the Warden (BP-9) or Regional Director (BP-10).

Another special factor is the increased burden placed on government operations when any court authorizes a damages remedy in a new context. As *Egbert* explained, it is Congress's role to weigh policy considerations and a court likely cannot predict the 'systemwide' consequences of recognizing a cause of action under *Bivens*." 596 U.S. at 491 and 493 (quoting *Ziglar*, 582 U.S. at 136). The BOP houses 155,399 inmates. *See* Fed. Bureau of Prisons, About Our Agency,

https://www.bop.gov/about/agency/ (last visited January 21, 2025).  It operates 122 institutions nationwide.        Federal        Bureau        of        Prisons,        About        Our        Facilities, https://www.bop.gov/about/facilities/federal_prisons.jsp (last visited January 21, 2025).  With so many inmates to care for, BOP officials and healthcare providers face a voluminous quantity of encounters related to abrasions, minor injuries, and prescription refills. Allowing a *Bivens* remedy for matters such as this would affect the manner in which routine medical care is provided.  *Id.*

Accordingly, the Court should dismiss any *Bivens* claims related to an alleged medical indifference to serious medical needs.

### iv.  Excessive Force

Plaintiff alleges an excessive use of force claim against Defendant Pistory, and perhaps Defendant Howard, based upon the events which took place on September 25, 2023. ECF No. 1 at 15–17.

Excessive force claims present a new context because they are distinguishable from the Supreme Court's three *Bivens* cases. This is reflected in cases, decided since the *Egbert* decision, from the Third, Fifth, Sixth, Ninth, Tenth, and Eleventh Circuits. *See, e.g., Kalu v. Spaulding*, 113 F.4th 311 (3d Cir. 2024) (excessive force claim raised a new context and special factors counseled hesitation against extending *Bivens*); *Landis v. Moye*r, No. 22-2421, 2024 WL 937070 (3d Cir. Mar. 5, 2024) (same); *Watkins v. Martinez*, No. 20-40781, 2022 WL 278376 (5th Cir. Jan. 31, 2022) (same); *Patton v. Blackburn*, No. 21-5995, 2023 WL 7183139 (6th Cir. May 2, 2023) (same); *Chambers*, 78 F.4th at 1107 (same); *Silva v. United States,* 45 F.4th 1134 (10th Cir. 2022) (same); *Farrington v. Diah,* No. 22-13281, 2023 WL 7220003 (11th Cir. Nov. 2, 2023) (same). In each of these cases, the court declined to extend a *Bivens* remedy after finding special factors counseled hesitation.

This Court, too, following *Egbert*, has declined to extend *Bivens* to excessive force claims. *See Garcia v. Barnes*, C/A No. 9:23-cv-01877-SAL-MHC, 2024 WL 3403051 (D.S.C. June 13, 2024), *report and recommendation adopted*, 2024 WL 3400911 (D.S.C. July 12, 2024) ("Plaintiff's claims under the Eighth Amendment pertaining to excessive force or conditions of confinement contain contexts in which *Bivens* has not been extended."); *Hammond v. Two Unknown Named Agents of the U.S. Marshals Serv.*, C/A No. 4:20-4298-JFA-TER, 2023 WL 2025206 (D.S.C. Jan. 9, 2023), *report and recommendation adopted*, 4:20-4298-JFA-TER, 2023 WL 2025171 (D.S.C. Feb. 15, 2023) (declining to extend *Bivens* to excessive force claims against Deputy U.S. Marshals and pretrial detainees, noting such would involve "systemic levels potentially affecting not only the scope of their responsibilities and duties but also their administrative and economic decisions") (quoting *Tate*, 54 F.4th at 846).

Despite this majority, a divided panel of the Fourth Circuit Court of Appeals recently permitted an excessive force claim to move forward after assuming that excessive force claims are a new context but finding no special factors counseled against a judicial remedy. *Fields v. Fed. Bureau of Prisons*, 109 F. 4th 264 (4th Cir. 2024). *Fields* bears similarities to the instant case, but a distinct difference is that *Fields* was on appeal after being dismissed by the district court upon initial screening, without the benefit of briefing, as is present here. There are also special factors present in this case that differentiate it from *Fields*.

First, Fields allegedly suffered "egregious physical abuse with no imaginable penological benefit." *Id.* at 272. Specifically, Fields alleged that, while cuffed at his hands and feet in an observation cell, prison officials rammed his head into a concrete wall and hit him with a fiberglass security shield. *Id.* at 268. Plaintiff, on the other hand, describes an altercation where he admits to slipping out of Pistory's grip, grabbing Pistory's vest, and encouraging Pistory to threaten him and

use excessive force. ECF No. 1 at 15–17. Pistory, for his part, is alleged to have pushed Plaintiff into a wall, tried to sweep his leg, and restrained his left arm, actions which clearly had a "penological benefit" under the circumstances. *Id.* Howard, for his part, is alleged to have grabbed Plaintiff's hair, pushed him toward (but not into) a wall, and applied pressure to his shoulder. Indeed, there are no allegations that Pistory or Howard beat, choked, or kicked Plaintiff. *cf Clemmons v. United States,* No. 0:16-1305-AMQ-PJG, 2018 WL 6071076, at *16 (July 26, 2018) *report and recommendation adopted, in part*, No. 0:16-cv-1305-DCC, 2018 WL 4959093 (Oct. 15, 2018) (allowing a pre-*Egbert* excessive force claim to proceed where the individual defendants allegedly choked the inmate and stomped on him while he was cuffed). Where, as here, an inmate refuses "to obey a proper order, he is attempting to assert his authority over a portion of the institution and its officials," which likewise "places the staff and other inmates in danger." *Soto v. Dickey*, 744 F.2d 1260, 1267 (7th Cir. 1984). In such circumstances, prison officials must decide if the application of restraints "is deserved and for how long." *Bistrian v. Levi*, 912 F.3d 79, 94 (3d Cir. 2018). Plaintiff's claims, which seek to challenge the decision to restrain him, in a way that the alleged criminal behavior in *Fields* and *Clemmons* did not, implicates the "broad policies pertaining to the reasoning, manner, and extent of prison discipline." *Id.*

Second, the plaintiff in Fields alleged a "clear violation of prison policy," whereas Plaintiff identifies no policy preventing Pistory from using force to restrain him in such a scenario.

Third, the analysis in *Fields* was based on allegations against "front-line officers" and could not "impact the discharge of supervisory officers' duties." 109 F. 4th at 273. By contrast, Plaintiff seeks to hold others in varying levels of the BOP's chain of command responsible for this altercation and the consequences that resulted for Plaintiff. Permitting such a sweeping claim to

move forward in the excessive force context obviously affects how BOP officials discharge their supervisory and oversight duties.

Fourth, the Court found "Fields lacked access to alternative remedies because prison officials *deliberately* thwarted his access to them." *Id.* at 274 (emphasis in original). Here, it is indisputable that, during his incarceration in the SHU, Plaintiff submitted a BP-8 and two BP-11's *and* received prompt responses to all documents. Between this and Plaintiff's statements that he ultimately obtained the necessary forms, Plaintiff's claim that he was denied access to the ARP is demonstrably false. Whatever the Court meant in *Fields* when it referenced "rogue officers" thwarting an inmate's access to the ARP, it simply could not have had this case in mind, where Plaintiff has sued 42 individuals, including the Warden, Regional Director, and the former Director of the BOP, in order to circumvent the ARP. If self-contradictory and grandiose allegations like these are all that is needed to bring a claim within *Fields*, then Judge Richardson's statement in dissent that excessive force claims "will impact virtually every prisoner and every prison official in our Circuit" has proven correct. *Id.* at 283.

**H.      The Individual Defendants are Entitled to Qualified Immunity.**

Even if Plaintiff had fully exhausted his PLRA administrative remedies, which he did not, and even if a *Bivens* remedy was available for Plaintiff's alleged harm, which it is not, Plaintiff's claim is still subject to dismissal due to the qualified immunity afforded the Individual Defendants.

In the *Bivens* context, federal employees are entitled to qualified immunity unless "(1) the allegations, if true, would substantiate a violation of a federal statutory or constitutional right and (2) the right was clearly established such that reasonable person would have known his acts or omissions violated that right." *Hicks v. Ferreyra*, 965 F.3d 302, 307 (4th Cir. 2020) (quoting *Brockington v. Boykins*, 637 F.3d 503, 506 (4th Cir. 2011)). Qualified immunity is a privilege that

provides "an immunity from suit rather than a mere defense to liability." *Saucier v. Katz*, 533 U.S. 194, 20001 (2001).

Plaintiff cannot establish a violation of any constitutional right by Defendants, much less that any of the rights implicated here were "clearly established" at the time. As such, the Defendants are immune from suit based on qualified immunity.

### 1. Mere supervisory capacity cannot support a *Bivens* claim.

Plaintiff has named six prison administrators and several other supervisory staff members as Defendants in this action: Janson, Lemos, Vandiver, Brinson, Hamilton, Randolph, Allen, and Ridgeway. Essentially, Plaintiff alleges these individuals made rounds in the SHU, but authorized or ignored the conditions and his concerns, failed to report misconduct of others, failed to enforce policies and procedures, and failed to train others. *See, e.g.*, ECF No. 1-4 at 14.

The United States Supreme Court abolished supervisory liability under *Bivens*: "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "Because *vicarious liability* is inapplicable to *Bivens* and section 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id*. The Court rejected the argument that "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution," and found that "purpose rather than knowledge" was required to impose liability. *Id*. at 677.

To the extent Plaintiff claims that these individuals failed to supervise the SHU at FCI Edgefield, such claim must fail, as the Defendants can only be held liable for their own misconduct, if any. *Id.* Supervisory decisions such as whether to place an inmate in the SHU or how to allocate limited maintenance and medical resources are beyond the scope of a *Bivens* action. The absence

of any meaningful personal involvement by these individuals bars any *Bivens* claim against them. *See Rizzo v. Goode*, 423 U.S. 362, 377 (1976) (dismissing claims and stating "that the responsible authorities had played no affirmative part in depriving [plaintiff-respondents] of any constitutional rights").

Accordingly, claims against these management officials (including the Warden of FCI Edgefield) should be dismissed.

**2. Collective allegations of wrongdoing are insufficient to state a *Bivens* claim.**

In many instances, Plaintiff attributes the conduct he finds objectionable to a list of individuals. Other times, he simply mentions that an individual was present or that they took some action that has no apparent wrongfulness. This generalized pleading is insufficient, under Rule 8(a)(2), to sustain a *Bivens* action because each defendant is liable for only his own personal participation in the events giving rise to the lawsuit.  *See Iqbal*, 556 U.S. at 677.

A "complaint's use of either the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom" makes it "impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008); *see also Langford v. Joyner*, 62 F. 4th 122, 125 (4th Cir. 2023) (citing *Robbins* with approval).  "The Supreme Court has made clear that to state a plausible *Bivens* claim, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Langford*, 62 F.4th at 125 (quoting *Iqbal*, 556 U.S. at 676).  Therefore, Plaintiff's allegations against the following eighteen individuals must be dismissed because they fail to differentiate between the individuals involved or describe routine conduct that cannot

possibly support a constitutional violation (i.e., providing information, providing forms, or simply being present for certain events) or because there are simply no allegations about them:

- Davis – ECF No. 1 at 4, 5–6; ECF No. 1-4 at 12
- Ferry – ECF No. 1 at 4–5, 20; ECF No. 12-2 at 9
- Coleman – ECF No. 1-5 at 4
- Evans – ECF No. 1 at 4–5; 12; 19; ECF No. 1-5 at 4
- Bonorden – ECF No. 1 at 5; ECF No. 12-2 at 8
- Morales – ECF No. 1 at 4–5
- Morgan – ECF No 1 at 4–5, 19
- Cooper – ECF No. 1-5 at 12
- Bray – ECF No. 1 at 12, 18–19; ECF No. 1-4 at 13, 17–18
- Barsh – ECF No. 1 at 9, 12–13, 18–19; ECF No. 1-4 at 13, 17–18
- Perez – ECF No. 1-5 at 10.
- Allen – ECF No. 1-5 at 10
- Ridgeway – ECF No. 1-5 at 10, 12–13
- Taylor – ECF No. 1 at 7, 10; ECF No. 12-4 at 2, 26
- Willard – No allegations against him in the Complaint
- Parker – ECF No. 1-5 at 9, 16
- Thorpe – ECF No. 1-5 at 10, 16–17; ECF No. 12-2 at 2
- Schmidt – No allegations against him in the Complaint
- Collins – ECF No. 12-4 at 2, 11

**3. Alleged violations of BOP policy do not present a cognizable *Bivens* claim.**

To the extent Plaintiff claims any of the Defendants violated BOP policy, such allegations fail to allege a constitutional violation and must be dismissed. In part, Plaintiff appears to allege that Defendants violated the standards of conduct policy by falsifying medical records and other findings, and by failing to report misconduct. *See* ECF No. 1-4, pp. 12, 14. He also alleges Defendant Nevils violated policy in not providing him a copy of his DHO report.

It is well-established that a claim that the BOP or one of its employees violated policy fails to rise to the level of a constitutional violation and is not cognizable under *Bivens*. "Further, any allegations that BOP employees did not follow BOP policies or procedures, standing alone, again do not amount to constitutional violations." *Perez-Perez v. Floyd*, No. 9:19-1984-CMC-BM, 2019 WL 7944417, at *3 (D.S.C. Dec. 4, 2019), *report and recommendation adopted*, No. 9:19-1984-

CMC, 2020 WL 58286 (D.S.C. Jan. 6, 2020) (citing *United States v. Caceres*, 440 U.S. 741 (1978); *Scates v. Doe*, No. 6:15-2904-MBS-KFM, 2016 WL 8672963, at *7 (D.S.C. May 6, 2016), *report and recommendation adopted*, No. CV 6:15-2904-MBS-KFM, 2016 WL 3769449 (D.S.C. July 13, 2016) ("A claim that the BOP or one of its employees violated policy fails to rise to the level of a constitutional violation.").

Accordingly, to the extent Plaintiff raises any claim that the named Defendants violated BOP policy and regulations, such claims must be dismissed for failure to state a claim under *Bivens*.

### 4. There is no constitutional right to be free from disciplinary reports, even allegedly false ones.

Plaintiff contends generally that all Defendants conspired to place him in SHU to "silence" him and interfere with his ability to exhaust administrative remedies. He specifically asserts that Defendants Janson, Lemos, Newcomb, Pistory, Hamilton, Howard, Barsh, Bray, and Randolph were responsible. As Plaintiff disputes the disciplinary action that resulted in his SHU placement, he essentially claims Defendants conspired to submit a false disciplinary action against him.

There is no constitutional right to be free from false disciplinary reports. *See Berryman v. Mullen*, No. 1:16cv47, 2017 WL 9516618, at *14 (N.D. W.Va. May 15, 2017), *report and recommendation adopted*, No. 1:16cv47, 2017 WL 3531098. "The act of filing false disciplinary charges does not itself violate a prisoner's constitutional rights." *Lewis v. Viton*, 07–3663, 2007 WL 2362587 * 9 (D.N.J. Aug. 14, 2007) (citing *Freeman v. Rideout*, 808 F.2d 949, 962–53 (2d Cir. 1986)). There is simply no constitutional right to be free from being falsely accused.

### 5. Plaintiff cannot establish a due process violation in his disciplinary actions and sanctions.

Based upon Plaintiff's actions on September 25, 2023, Defendant Nevils, DHO, conducted the DHO hearing on October 13, 2023, and found Plaintiff guilty of violating Prohibited Act Code 224, Assaulting without Serious Injury, based upon Plaintiff's admission to the charge. **Ex. 1, Att. G, SENTRY Inmate Discipline Data, Chronological Disciplinary Record, Report Number 3831008**. DHO Nevils imposed sanctions consisting of 10 days disciplinary segregation and 90 days loss of commissary privileges. *Id*. Plaintiff did not lose any good conduct time due to this disciplinary action. *Id.*

To prevail on a due process claim, an inmate must first demonstrate that he was deprived of "life, liberty, or property" by governmental action. *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997). To establish a due process violation, Plaintiff must prove "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483-84; *Beverati*, 120 F.3d at 502 (4th Cir. 1997). Any claim regarding disciplinary segregation, (i.e., placement in the SHU) and loss of commissary privileges in Plaintiff's disciplinary action simply does not state a due process violation.

There is no liberty interest in the loss of commissary privileges, as it is not an atypical and significant hardship in relation to the ordinary incidents of prison life. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Pierre v. Ozmint*, NO. 3:09-226-CMC-JRM, 2010 WL 679946, at *7 (D.S.C. Feb. 24, 2010) (stating that canteen access is not a protected liberty interest), *aff'd*, 410 F. App'x 595 (4th Cir. Feb. 7, 2011).

Similarly, there is no liberty interest in remaining free from disciplinary or administrative segregation time. *See Sandin*, 515 U.S. at 486. "[The] sanctions, including disciplinary segregation and loss of [commissary and email] privileges do not involve a liberty interest, because they do not impact the length of his confinement [and, t]herefore, they do not state a claim for relief."

*Thompson v. Entzel*, No. 5:19-cv-11, 2019 WL 4794742 at *6 (N.D. W. Va. Sept. 6, 2019), *report and recommendation adopted*, No. 5:19-cv-11, 2019 WL 4781873 (N.D. W. Va. Sept. 30, 2019), *aff'd*, 801 F. App'x 139 (4th Cir. 2020); *Saunders v. Mitchell*, C/A No. 2:12 -2152-JFA-BHH, 2013 WL 5332630 (D.S.C. Sept. 23, 2013) (disciplinary segregation, loss of phone privileges, and loss of commissary privileges do not implicate due process rights). "[B]ecause [he] did not suffer the loss of good conduct time, or any sanction resulting in a direct change in the length or duration of his overall confinement, he cannot establish a liberty interest on that basis in order to assert a cognizable procedural or substantive due process claim." *Miller v. Ballard*, No. 2:13-cv-15024, 2016 WL 5395711, at *3 (S.D.W.Va. July 15, 2016), *report and recommendation adopted*, No. 2:13-cv-15024, 2016 WL 5387642 (S.D.W.Va. Sept. 23, 2016).

Plaintiff's imposed sanctions implicate no liberty interest, and therefore he has no due process claim on his discipline action. Additionally, any attempt to appeal the discipline action to this Court in a habeas action would have been unsuccessful, because his claims are not cognizable under section 2241 because they did not affect the fact or duration of his confinement. As such, Plaintiff can show no harm from not receiving his DHO report, as he could not seek relief from the Court. Because these sanctions implicate no liberty interest, any due process claims must be dismissed.

**6.      Comments or threats do not violate Plaintiff's Eighth Amendment rights.**

Plaintiff alleges that certain Defendants were verbally abusive to him and threatened him, including Defendants Newcomb, Pistory, and Howard. Any such claims of verbal abuse or harassment fail to state a constitutional claim and should be dismissed. "Mere threats or verbal abuse, without more, do not state a cognizable claim." *Wilson v. McKeller*, 254 F. App'x 960, 961 (4th Cir. 2007); *see also Henslee v. Lewis*, 153 F. App'x 178, 180 (4th Cir. 2005); *Lancaster v.*

*Todd*, No. 1:16CV200, 2017 WL 4278785, at *2 (N.D. W. Va. Sept. 27, 2017), *aff'd*, 710 F. App'x 168 (4th Cir. 2018) (holding mere verbal harassment in the form of cursing and racial slurs does not state a constitutional violation).

       7.    **Plaintiff cannot recover for emotional or psychological damages without a showing of physical injury.**

"No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act . . . ." 42 U.S.C. § 1997e(e). "There is no recovery for mental or emotional stress without consequent physical injury." *Perez-Diaz v. Hano*, No. 3:20-CV-225, 2021 WL 1680484, at *2 (N.D. W.Va. Jan. 14, 2021), *report and recommendation adopted*, No. 3:20-CV-225, 2021 WL 1680449 (N.D. W.Va. Apr. 28, 2021); s*ee Mayfield v. Fleming,* No. 01-7602, 2002 WL 561217 (4th Cir. April 16, 2002) (1983 action for money damages was properly barred under 42 U.S.C. § 1997e(e) because plaintiff failed to show any physical injury); *Brooks v. Liptrot*, 2013 WL 4498679, at *4 (E.D. Va. Aug. 21, 2013) ("Section 1997(e) prohibits inmates from bringing actions for mental or emotional injury suffered while in custody without a prior showing of physical injury.") *aff'd,* 549 F. App'x 173 (4th Cir. 2013).

Plaintiff's Complaint alleges a failure to protect claim under the Eighth Amendment against Defendants Davis, Morgan, Evans, Morales, Bonorden, Ferry, and Hamilton for the alleged October 3, 2023 incident in which Plaintiff alleges his cellmate assaulted him by throwing feces and urine at him in the SHU cell. He alleges Defendants Davis and Ferry moved him to a new cell but did not provide a change of clothing for two or three hours and that Davis did not provide the requested towel, washcloth, and soap. However, Plaintiff asserts no physical injury he sustained during this alleged incident or as a result of any conduct of the Defendants. "[A]s to the claim that

[Plaintiff] was exposed to the one time throwing of urine and feces upon him, even assuming this to be true, such action does not allege a more than *de minimis* claim of physical injury." *Birdo v. Barnett*, Civil Action No. 1:16-CV-108-BL, 2018 WL 1901682, at *6 (N.D. Tex. April 20, 2018).[9]

Similarly, Plaintiff raises several conditions of confinement allegations related to the conditions in SHU and in the general population, alleging he was subjected to mold and that the cells had faulty plumbing and heat issues. However, he alleges no physical injury resulting from these conditions of confinement. Similarly, Plaintiff alleges that Defendants Davis, Evans, and Coleman placed another inmate in the cell with him on October 5, 2023, who also required a lower bunk.  He alleges no physical injury resulting from this arrangement.  Absent physical injuries, 42 U.S.C. § 1997e(e) bars recovery for mental or emotional injury. To the extent such claim is raised, it should be dismissed.

## CONCLUSION

In filing this Motion, the United States is mindful that Plaintiff is a former inmate proceeding *pro se*. Nevertheless, this is not a case where the allegations suggest a viable claim may exist that Plaintiff has failed to adequately plead. Instead, the Complaint, its attachments, and the BOP's records demonstrate that Plaintiff failed to exhaust administrative remedies and that his claims suffer from other incurable flaws. Therefore, the Court should dismiss this action pursuant to Rules (12)(b)(1), 12(b)(2), and Rule 12(b)(6) or, alternatively, grant summary judgment to the United States.

---

[9] Moreover, in *Shakka v. Smith*, 71 F.3d 162, 167-68 (4th Cir. 1995), the Fourth Circuit determined a plaintiff failed to establish an Eighth Amendment violation where he was provided with water and cleaning material but denied a shower for three days after human waste was thrown on him and his surroundings. *See also Joyner v. Patterson*, 2014 WL 3909531, at *4 (D.S.C. Aug. 11, 2014), *aff'd*, 597 F. App'x 748 (4th Cir. 2015) (finding no Eighth Amendment violation where inmate was provided infrequent and limited number of showers, and food trays, and given a cell that on several occasions floods with toilet water containing urine and feces).

Respectfully submitted,

ADAIR F. BOROUGHS
UNITED STATES ATTORNEY

By:     *s/Todd Timmons*
       Todd Timmons (#11254)
       Assistant United States Attorney
       1441 Main Street, Suite 500
       Columbia, South Carolina  29201
       Phone: 803-237-9265
       Email:  todd.timmons@usdoj.gov

January 28, 2025

## CERTIFICATE OF SERVICE

The undersigned Assistant United States Attorney hereby certifies that he has caused the attached **DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT** to be served by an employee of the Office of the United States Attorney for the District of South Carolina who is a person of such age and discretion as to be competent to serve papers.

Therefore, on January 28, 2025, a copy of the foregoing document will be filed via the court's CM/ECF system, and will be served by U.S. mail to the name and address listed below from the United States Attorney's Office, 1441 Main Street, Suite 500, Columbia, South Carolina 29201.

Patrick O'Neal Harris
Reg. No. 33905-057
Union County Jail
3344 Presson Road
Monroe, NC 28112

*s/Todd Timmons*
TODD TIMMONS (#11254)
Assistant United States Attorney